UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 01 2016
```

Michelle Cora,

    Plaintiff,

 –v–

Carolyn W. Colvin,

    Defendant.

15-cv-1549 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

  Plaintiff Michelle Cora brings this action seeking review and reversal of a denial of disability benefits by the Social Security Administration. Both parties sought judgment on the pleadings. The Honorable Kevin Nathaniel Fox, United States Magistrate Judge, issued a Report and Recommendation ("Report"), Dkt. No. 23, recommending that the Court grant Defendant's motion and deny Plaintiff's. Before the Court are Cora's objections to the Report. For the reasons set forth below, the Court declines to accept the report and remands the case for further proceedings before the administrative law judge ("ALJ").

I.  **Background**

  This order assumes familiarity with the facts and history of the case, which are laid out in detail in the Report, and are incorporated by reference here. Briefly, Plaintiff Michelle Cora was a police officer who suffered a severe knee injury in 2007. In 2009, she left the police force with disability benefits due to knee and lower back pain. Cora applied for Social Security Disability benefits on October 23, 2010, and was denied on March 18, 2011. After exhausting the Social Security Administration appeals process, Cora filed this action on March 3, 2015. The case was referred to Judge Fox, and both parties moved for judgment on the pleadings. On March 3,

1

2016, Judge Fox issued his Report recommending that the Court grant Defendant's motion and deny Plaintiff's. Cora timely filed objections to the Report.

## II.  Standard of Review

A district court "may designate a magistrate judge to hear and determine" certain motions and to "submit . . . proposed findings of fact and recommendations for the disposition" of those motions. *See* 28 U.S.C. § 636(b)(1)(A), (B). A party may file written objections to the magistrate judge's report and recommendation within fourteen days of its filing. *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). If a party submits a timely objection, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). If "no 'specific written objection' is made, the district court may adopt those portions as long 'as the factual and legal basis supporting the findings and conclusions set forth . . . are not clearly erroneous or contrary to law.'" *Norman v. Astrue*, 912 F. Supp. 2d 33, 39 (S.D.N.Y. 2012) (quoting *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008)).

The Court rejects Defendant's argument that the Court should review these objections only for clear error because they are "merely a rehashing of the arguments she made and positions she took before the Magistrate Judge." Opp. to Obj. at 5. Although it is often said that "clear error review is also appropriate if a party's objection 'simply reiterates the party's original arguments,'" this Court has expressed skepticism of this principle. *Watson v. Geithner*, No. 11 CIV. 9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013) (Nathan, J.) (brackets omitted). Cora forfeited arguments not raised before the Magistrate, and was thus required to continue advocating the same positions she took below. *See id.* It would be impossible for Cora to convince the Court of arguments rejected by the Magistrate if she could not reiterate her arguments to some degree. *See id.* Clear error review is particularly inappropriate in a case like

this one, because Cora's objections respond to the Report's conclusions and its framing of the issues. Accordingly, the Court reviews Cora's objections *de novo*.

### III. The ALJ Committed Legal Error by Failing to Correctly Apply the Treating Physician Rule

Cora raises three objections to the Report. First, she argues the Report wrongly determined that the ALJ correctly applied the treating physician rule. Second, she argues that the Report incorrectly found that the ALJ's decision not to credit her testimony was supported by substantial evidence. Third, she argues that the Report wrongly concluded that the vocational expert's testimony constituted substantial evidence of her ability to work. For the reasons below, the Court agrees with Cora that the ALJ failed to correctly apply the treating physician rule, and therefore remands the case to the ALJ without reaching Cora's other objections.

#### A. Legal Framework for Social Security Disability Determinations

The Social Security Act defines disability to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether an applicant is disabled within the meaning of the Act, the ALJ employs a five-step test. If the ALJ

> determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); *see* 20 C.F.R. § 404.1520(a)(4). At step four, the ALJ must determine the claimant's "residual functional capacity," defined as "the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing 20 C.F.R. § 404.1545). "If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then

3

shifts to the Secretary to prove in the fifth step that the claimant is capable of working." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). However, this burden shift is limited: "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity," since that capacity is determined at step four. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

When an applicant appeals a denial of benefits, the Court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess*, 537 F.3d at 127; *see* 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). However, it is a deferential standard of review, and the Court can reject an ALJ's factual finding "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "generally will remand where there is a reasonable basis for doubt whether the ALJ applied correct legal principles." *Poupore*, 566 F.3d at 306 (brackets, internal quotation marks, and citations omitted).

### B. The Treating Physician Rule

Cora argues that the ALJ improperly discounted the medical opinion of her treating physician, Dr. Michael Hearns, and she objects that the Report incorrectly determined otherwise. The Social Security Act "recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Under this rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). "Generally, the opinion of the treating

physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts, for genuine conflicts in the medical evidence are for the Commissioner to resolve." *Id.* (citations, brackets, ellipses, and internal quotation marks omitted). Despite this power to decide between competing experts, however, "in the absence of a medical opinion to support the ALJ's finding as to a plaintiff's ability, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Cahill v. Colvin*, No. 12 CIV. 9445 (PAE) (MHD), 2014 WL 7392895, at *15 (S.D.N.Y. Dec. 29, 2014) (quoting *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998)) (ellipses, brackets, and internal quotation marks omitted).

If the treating physician's opinion is not given *controlling* weight, the ALJ must then determine what weight to give the opinion. At that point, "[i]n order to override the opinion of the treating physician, . . . the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see* 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6). The ALJ must "comprehensively" explain his evaluation of the opinion, and "[t]he failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Greek*, 802 F.3d at 375. As a general matter, "[f]ailure to properly apply the treating physician's rule, or consider the required factors, constitutes legal error and is a sufficient basis for remand." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 506 (S.D.N.Y. 2014); *see, e.g., Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (remanding due to failure to properly apply treating physician rule).

The Second Circuit has held that an ALJ may not "reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings." *Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). In *Rosa*, the ALJ rejected the favorable opinion of plaintiff's treating physician in favor of the opinions of two consulting physicians whose findings the ALJ

5

claimed were "consistent" with the plaintiff's ability to perform a full range of sedentary work. *Rosa*, 168 F.3d at 76. The Second Circuit determined that this was error because the consulting physicians' "reports were consistent with this conclusion . . . only to the extent that they were silent on the issue," and "there was no indication . . . that the consultants intended anything by their silence or that they set out to express an opinion on the subject" of her functional work capacity. *Id.* at 81 (brackets, quotation marks, and citation omitted). The Court held that the consultants' omissions could not serve as substantial evidence justifying rejection of the treating physician's opinion. *Id.* Similarly, a consulting physician's opinion is not substantial evidence contradicting a treating physician's opinion if it is "couched in terms 'so vague as to render it useless in evaluating' the claimant's residual functional capacity." *Burgess*, 537 F.3d at 128-29 (quoting *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)) (consulting physician "described the claimant's impairments only as '[l]ifting and carrying moderate[,] standing and walking, pushing and pulling and sitting mild'").

### C. The ALJ Misapplied the Treating Physician Rule

Cora argues that the ALJ misapplied the treating physician rule by failing to accord controlling weight to Dr. Hearns's opinion. She argues that the ALJ failed to identify substantial evidence in the record contradicting Dr. Hearns's opinion. For the reasons below, the Court agrees.

#### 1. The ALJ Gave Dr. Hearns's Opinion Little Weight

The Court begins its analysis by reviewing the ALJ's application of the treating physician rule in this case. The ALJ identified Dr. Hearns as Cora's treating physician, and the parties do not dispute this. AR 15. Dr. Hearns described Cora as having a "total and permanent disability" as a result of her difficulties sitting or standing for prolonged periods; her difficulties lifting, bending, pivoting, walking, and crawling; her chronic pain; her medications; and periodic "flare-ups" of her condition that leave her bed-ridden. AR 522–525. Dr. Hearns filled out a functional

6

capacities form stating that during a typical eight-hour workday, Cora can stand or walk for less than two hours, sit for less than four, carry between five and ten pounds for a third of the day, or carry less than five pounds for two thirds of the day. AR 520. He also stated that she requires periods of bed rests and frequent breaks during the work day, suffers from pain and medication side effects that would prevent her from completing eight hours of work per day, would have difficulty concentrating, and requires two or more sick days off per month. AR 521.

The ALJ gave little weight to Dr. Hearns's opinion and found that it was not supported by substantial evidence. The ALJ offered the following reasons for doing so: Dr. Hearns's findings are contradicted by those of the consulting physician, Dr. Suraj Malholtra, and other treating sources in the record; his findings contained an internal contradiction; he failed to respond to a request for clarification of his findings; he charges a fee for filling out Social Security Disability forms; and his clinical findings were "sparse." AR 15–16. The ALJ concluded that Cora retained the capacity to perform sedentary work, albeit with a number of limitations. *Id.* at 13. "Sedentary work is defined as work that involves lifting up to ten pounds at a time and occasionally lifting and carrying light objects ... [, and] generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing 20 C.F.R. § 404.1567(a)).

### 2. The Opinion of Dr. Malhotra is Not Substantial Contradictory Evidence

The Court first considers the opinion of Dr. Malhotra, the consulting physician. Dr. Malhotra examined Cora on March 10, 2011, on behalf of the New York Division of Disability Determination. Dr. Malhotra observed that Cora had "some back pain on prolonged sitting" but was otherwise not in "acute discomfort." AR 486. He found that she had difficulty walking on her heels and squatting due to back pain, and that she could not put on socks without help. *Id.* He also found that she had a normal gait, and had no trouble getting onto and off of the exam table and standing up from a chair. *Id.* Performing a physical examination, he found full strength and flexibility in her hands, arms, legs, and cervical spine. AR 486–87. However, he

7

found "mild" movement limitations in her shoulders and thoracic/lumbar spine. AR 486. Dr. Malhotra concluded that Cora suffers from "[m]ild limitation in bending, moderate limitation in squatting, and moderate limitation in elevating the arms above the shoulder level." AR 487. Reviewing this record, the ALJ stated that "overall, [Dr. Malhotra's] opinion supports that the claimant can at least engage in sedentary work with at least the ability to frequently reach in all directions and frequently stoop. This opinion is consistent with the clinical results of the consultative examination." AR 14.

Dr. Malhotra's opinion is not substantial evidence contrary to Dr. Hearns's opinion. Dr. Malhotra's findings regarding Cora's strength and mobility are not equivalent to, and do not necessarily encompass, findings regarding how long Cora can sit, stand, or walk, how much weight she can carry for a span of hours; Cora's ability to concentrate in spite of pain and medication; or the frequency with which "flare-ups" of Cora's condition leave her bedridden. *Cf. Beam v. Colvin*, No. 14-CV-9889 (KBF), 2015 WL 4660936, at *7 (S.D.N.Y. Aug. 6, 2015) ("[A] finding that plaintiff is 'neurologically intact' or lacks 'motors deficits' is not equivalent to—or necessarily encompass—a finding that plaintiff is capable of sitting a certain number of hours each day."). The fact that Dr. Malhotra's assessment of Cora is "consistent" with the requirements of sedentary work does not, in and of itself, permit it to serve as substantial evidence contrary to the treating physician's opinion. *See Rosa*, 168 F.3d at 81. The ALJ was not entitled to reject Dr. Hearns's opinion regarding Cora's capabilities on the basis of the opinion of a doctor who did not assess those capabilities. *See id.* (ALJ cannot "reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings."); *Arzu v. Colvin*, No. 14 CIV. 2260 (JCF), 2015 WL 1475136, at *11 (S.D.N.Y. Apr. 1, 2015) ("Because they did not make any assessments concerning the plaintiff's walking capability, their opinions cannot be construed as evidence that Dr. Stanley's opinion on the plaintiff's walking capability is deficient."); *Perez-Rodriguez v. Astrue*, No. 10 CIV. 9346 (NRB), 2011 WL 6413763, at *10–11 (S.D.N.Y. Dec. 21, 2011) ("[T]he silence of a consultative physician on an issue pertinent to a claimant's [residual function] is not an appropriate basis on

which to resolve that issue to the claimant's detriment."); *Corretjer v. Barnhart*, No. 02 CIV. 1700 (HB), 2003 WL 1936146, at *4 (S.D.N.Y. Apr. 22, 2003) (treating physician's opinion was not inconsistent with other substantive evidence where he "was the only one to expressly render an opinion" on the relevant issue); *Rodriguez v. Apfel*, No. 97 CIV. 9030 (MGC), 1999 WL 511867, at *5 (S.D.N.Y. July 19, 1999) ("[T]he physicians' failure to mention sitting limitations is not positive evidence that the claimant has no such limitations.").

Defendant argues that "the only logical conclusion is that Dr. Malhotra did not include any limitation on sitting, standing, walking, lifting, or carrying in his medical source statement is because none was warranted." Opp. to Obj. at 9. But courts in this Circuit have found it inappropriate for ALJs to infer unspoken functional assessments from similar physical exams conducted by consulting physicians, unless those exams provide particularly relevant findings. *See, e.g., Khan v. Comm'r of Soc. Sec.*, No. 14-CV-4260 (MKB), 2015 WL 5774828, at *16–18 (E.D.N.Y. Sept. 30, 2015) (rejecting inference of functional capacity from consulting physician's exam "notes regarding, among other things, Plaintiff's stance and gait, the full range of motion in her hips and knees, and her use of a cane for balance"); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19–20 (E.D.N.Y. Mar. 23, 2015) (rejecting inference of lifting capacity from consulting examiner's report stating "that Plaintiff's cervical, lumbar spine later rotation, flexion, and extension were within normal limits"); *Archambault v. Astrue*, No. 09 CIV. 6363 (RJS) (MHD), 2010 WL 5829378, at *28–29 (S.D.N.Y. Dec. 13, 2010), *report and recommendation adopted,* No. 09 CIV. 6363 (RJS) (MHD), 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011) (rejecting inference of sitting capacity from "one-time examination of plaintiff in which the doctor tested the range of motion in, and strength of, his spine and upper and lower extremities, not his ability to sit for extended periods of time."). *But see Samuel v. Comm'r of Social Security*, No. 13 Civ. 1939 (BMC), 2014 U.S. Dist. LEXIS 163220, *4 (June 3, 2014) (permitting inference where consulting physician "did a very thorough report, testing and reporting on every aspect of plaintiff's spinal dynamic ability and strength."). Indeed, in a similar case involving an assessment by Dr. Malhotra, Judge Engelmayer observed that "[u]nlike

9

the reports provided by the treating physicians, Dr. Malhotra's evaluation offered no opinion regarding plaintiff's exertional capacities—*e.g.*, his capacity to walk, stand, lift, or sit—to inform a residual functional capacity determination." *Cahill v. Colvin*, No. 12 CIV. 9445 (PAE) (MHD), 2014 WL 7392895, at *11 (S.D.N.Y. Dec. 29, 2014).

Defendant's authorities are not to the contrary. Defendant seeks to rely on *Stivers v. Colvin*, No. 5:11-CV-1019 (GLS), 2013 WL 3327958, at *4 (N.D.N.Y. July 2, 2013), in which the court permitted the ALJ to infer that Stivers "had no physical deficits in his ability to use his hands, hear, speak, and travel" from silence in a consulting physician's report. But the only one of those areas in which Stivers alleged a deficiency was the use of his hands, and the consulting physician found that his "hand and finger dexterity were intact and grip strength was 5/5, and . . . that Stivers suffered no limitations in the use of his upper extremities." *Id.* This case, in which the ALJ inferred many more findings from far less relevant evidence, is not comparable. Defendant's other authority, *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir. 1983), is not on point. *Dumas* states that "[t]he Secretary is entitled to rely not only on what the record says, but also on what it does not say." *Id.* at 1553. But in *Dumas*, there was no evidence of one of plaintiff's claimed disabilities in the record. As the Second Circuit has noted, "*Dumas* did not authorize the Secretary to discard a treating doctor's opinion on the basis of prior omissions in the record." *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 861 (2d Cir. 1990).

Furthermore, there is good reason to think that Dr. Malhotra did not intend his silence to indicate that Cora has no limitations other than the ones he identified. In his notes regarding Cora's "general appearance, gait, behavior, [and station]," Dr. Malhotra observed that Cora "has some back pain on prolonged sitting." If the Court read Dr. Malhotra's silence on Cora's capacity to sit to indicate that he considered her to have no limitations on sitting, that would render his report internally inconsistent. The Court therefore concludes that Dr. Malhotra expressed no opinion on Cora's functional capacities beyond those he stated explicitly. "At a minimum," rather than arbitrarily filling gaps or potential inconsistencies in Dr. Malhotra's

10

report with his own lay opinion, the ALJ "should have contacted Dr. [Malhotra] and sought clarification of his report." *Selian*, 708 F.3d at 421.

The above alone would be sufficient for the Court to conclude that Dr. Malhotra's opinion does not constitute substantial evidence contrary to the treating physician's opinion. However, there are additional reasons to discount his opinion. "Where . . . there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 78 n.4 (2d Cir. 2012) (quoting *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir. 1990)). This is because "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz*, 912 F.2d at 13. And they often "ignore or give only passing consideration to subjective symptoms without stated reasons"—precisely how Dr. Malhotra treated Cora's back pain from prolonged sitting. *Id.*; *see Jacobson v. Colvin*, No. 12-CV-8416 (CS), 2014 WL 25493, at *13 (S.D.N.Y. Jan. 2, 2014) (finding that report by Dr. Malhotra was not substantial evidence contradicting treating physician's report because it was "based on a one-time consultative examination, contain[ed] considerably less detail regarding Plaintiff's prior medical history and offer[ed] no opinion as to whether Plaintiff could work an eight-hour receptionist shift without frequent breaks or periods of bed rest").

Moreover, "[t]he inadequacy of Dr. [Malhotra's] opinion as a basis for the ALJ's decision to deny benefits to [Cora] is demonstrated further by the ALJ's implicit rejection" of Dr. Malhotra's purported findings. *Curry v. Apfel*, 209 F.3d 117, 123–24 (2d Cir. 2000), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1560(c)(2). As Cora pointed out to the Magistrate, insofar as the ALJ interpreted Dr. Malhotra's silence to imply a finding that Cora had no other limitations, the ALJ rejected those findings when he determined that Cora required a sit/stand at will option at work, among other limitations, based on the findings of Cora's other physicians. Pl.'s Reply at 3. The ALJ's ultimate rejection of Dr. Malhotra's alleged view of

11

Cora's functional capacity undermines his ability to deploy it as substantial evidence contrary to the treating physician's opinion. *See Curry*, 209 F.3d at 124.

In sum, the Court concludes that Dr. Malhotra's opinion is not substantial evidence contradicting the opinion of Dr. Hearns regarding Cora's functional capacities, and cannot be used to justify the ALJ's decision not to accord Dr. Hearns's opinion controlling weight.

### 3. The Records of Other Treating Sources Are Not Substantial Evidence Contradicting Dr. Hearns

The Court next turns to the records of the two other treating sources that the ALJ claimed are inconsistent with the opinion of Dr. Hearns: Dr. John Peralo and Dr. Joseph Ho. The ALJ's assessment of the records of these physicians suffers from the same infirmity as his evaluation of Dr. Malhotra's opinion: they did not evaluate Cora's residual functional capacity, and their omissions do not contradict the opinion of Dr. Hearns. *See Rosa*, 168 F.3d at 81.

Dr. Peralo performed a physical examination on Cora in July 2012 in connection with a hernia. AR 683–84. The ALJ observed that at the exam, Cora "denied joint pain or swelling, was in no acute distress, and had full range of motion of the neck." AR 13. The ALJ also noted that other records from Dr. Peralo's office indicated that Cora had back pain that impeded sitting or standing for long periods of time. AR 14; *see* AR 688. From these records, the ALJ determined that Cora should have a sit/stand at will option. AR 14. Dr. Peralo did not evaluate Cora's functional capacities or ability to do sedentary work, and nothing in his records indicates that he intended his silence to act as a finding. Nor do his records contradict Dr. Hearns's opinion. In fact, the account of Cora's difficulty sitting or standing for long periods supports Dr. Hearns. Dr. Peralo's records are therefore not substantial evidence contrary to the treating physician's opinion.

Dr. Ho was Cora's pain management physician from 2010 through 2012. Dr. Ho describes Cora as suffering from "chronic disabling pain which has caused psychological, social, and physical impairment." *See, e.g.*, AR 451, 457, 582. In his examination notes, Dr. Ho states that Cora's pain "varies from 4 to 10 out of 10 in severity," is "constant, achy and sharp," and is

12

aggravated by "getting up from [a] sitting position" and "walking." *See, e.g.*, AR 441, 446. He also noted that she walks with a limp. *See, e.g.*, AR 443, 448. Dr. Ho prescribed Cora painkillers, and also repeatedly performed more invasive pain treatments, including nerve blocks and trigger point injections. *See, e.g.*, AR 445, 450, 456. In evaluating Dr. Ho's records, the ALJ reviewed the physical exams Dr. Ho performed, and noted the levels of pain, tenderness, sensations, and reflexes Dr. Ho found in Cora's back and extremities. AR 15. The ALJ stated that "[o]verall, the physical examinations provide substantial evidence in support for the above noted residual functional capacity." *Id.*

The ALJ committed the same error with Dr. Ho that he did with Dr. Peralo and Dr. Malhotra. Dr. Ho did not evaluate Cora's functional capabilities or her ability to do sedentary work, and the ALJ could not infer otherwise from Dr. Ho's silence. Far from contradicting Dr. Hearns, Dr. Ho's description of Cora's pain and its aggravating factors, her limp, and the frequent, invasive pain interventions lend credence to the seriousness of Cora's condition. Furthermore, in response to an inquiry from the ALJ, Dr. Ho specifically noted that he "cannot provide a medical opinion regarding [Cora's] ability to do work-related activities." AR 437. "[T]he fact that Dr. [Ho] declined to provide an opinion as to [Cora's] functional limitations and that Dr. [Ho's] treatment notes do not report any such limitations are not reasons themselves to discredit Dr. [Hearns's] opinion with regards to" Cora's functional capacity. *Orchanian v. Colvin*, No. 14-CV-05161 (FB), 2015 WL 5167879, at *3 (E.D.N.Y. Sept. 4, 2015); *see also Hooper v. Colvin*, — F. Supp. 3d —, 2016 WL 4154701 (S.D.N.Y. Aug. 5, 2016) (noting that it was misleading for ALJ to characterize physician as declining to assess limitations when she unambiguously stated that she lacked sufficient information).

### 4. The ALJ's Remaining Reasons Do Not Justify Discounting Dr. Hearns's Report

In declining to give controlling weight to Dr. Hearns's opinion on Cora's residual functional capacities, the ALJ appears to have primarily relied on the opinions of Drs. Malhotra, Peralo, and Ho. As explained above, those records cannot justify discounting Dr. Hearns's

opinion. Although the ALJ offered additional reasons for giving little weight to Dr. Hearns's findings, it is unclear from the ALJ's decision whether he believed those reasons alone would justify rejecting a treating physician's opinion. As such, there is at minimum "a reasonable basis for doubt whether the ALJ applied correct legal principles," and remand is therefore appropriate. *Poupore*, 566 F.3d at 306 (quoting *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir. 1998)).

Additionally, the other reasons given by the ALJ for rejecting the opinion of Dr. Hearns do not justify the failure to accord controlling weight to the opinion of a treating physician. First, the ALJ argued that Dr. Hearns's records are internally inconsistent, because he sometimes indicated that Cora was totally disabled, while at other times indicating that she could do a reduced range of sedentary work. AR 15–16. But the record the ALJ cites for the latter opinion does not contain anything to support the idea that Cora could do a reduced range of sedentary work. *See* AR 520–25. And even if it did, "an ALJ may not reject a treating physician's opinion based solely on internal conflicts in that physician's clinical findings." *Lamond v. Astrue*, 440 F. App'x 17, 21 (2d Cir. 2011) (citing *Balsamo v. Chater,* 142 F.3d 75, 80 (2d Cir. 1998)) (internal quotations omitted). Second, the ALJ noted that Dr. Hearns did not provide a clarification of his opinion in light of this alleged inconsistency. But failure to provide clarification is not, in and of itself, a reason to discount an opinion that is not already inconsistent or unclear. *See Naumovski v. Astrue*, No. 09CV862A, 2010 WL 3386017, at *4 (W.D.N.Y. June 9, 2010), *report and recommendation adopted,* No. 09-CV-862, 2010 WL 3386015 (W.D.N.Y. Aug. 25, 2010). Third, the ALJ observed that Dr. Hearns typically charges a fee for filling out disability-related paperwork, though it is unclear whether he was actually paid in this case. As the Second Circuit has observed, however, this line of reasoning proves too much: "under the [ALJ's] standard, virtually every opinion provided would be suspect to the extent it was requested by an interested party . . . because it is always arguably in the 'self-interest' of the doctor to help the party who requested that he give an opinion." *Diaz v. Shalala,* 59 F.3d 307, 314 n.9 (2d Cir. 1995). Finally, the ALJ stated that Dr. Hearns's clinical findings are "sparse." AR 16. A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically

14

acceptable clinical and laboratory diagnostic techniques." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)). But the ALJ's one-word critique of Dr. Hearns's findings is not sufficiently detailed for the Court to evaluate, much less to justify a refusal to accord controlling weight to the opinion. *See Taylor v. Astrue*, No. 07-CV-0557-A, 2009 WL 2390762, at *4 (W.D.N.Y. July 31, 2009) (lack of objective findings must be "overwhelming").

Finally, even if any or all of the ALJ's arguments were sufficient to justify declining to accord controlling weight to Dr. Hearns's opinion, the ALJ would still have had to determine the appropriate weight for the opinion using the factors in 20 C.F.R. § 404.1527 in order to justify overriding it. This the ALJ failed to do. The Court therefore concludes that the ALJ failed to correctly apply the treating physician rule in evaluating Dr. Hearns's opinion.

### D. Disposition

Having determined that the ALJ committed legal error by failing to properly apply the treating physician rule, the Court must remand the case. On remand, the ALJ must reconsider his decision not to afford controlling weight to Dr. Hearns's opinion. "If the ALJ still believes that controlling weight is not appropriate, he must articulate more specific and substantial considerations that support this decision. Furthermore, even if the ALJ decides not to grant controlling weight, he must thoroughly consider the factors enumerated in 20 C.F.R. § 404.1527(d) in determining the appropriate degree of deference to afford." *Perez-Rodriguez v. Astrue*, No. 10 CIV. 9346 (NRB), 2011 WL 6413763, at *11 (S.D.N.Y. Dec. 21, 2011).

If, on remand, the ALJ's reevaluation of Dr. Hearns's opinion leads to a change in his determination of Cora's residual functional capacity, the ALJ must then reevaluate his determination of her credibility. *Jermyn*, 2015 WL 1298997, at *21.

### IV. Conclusion

For the reasons set forth above, the Court declines to adopt the Report. Plaintiff's motion for judgment on the pleadings is granted, and Defendant's is denied. The case is remanded to the

ALJ for further proceedings pursuant to this opinion. The Clerk of Court is instructed to close the case.

SO ORDERED.

Dated: September 1, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge